# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| CHARLENE A. HUMPHREY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　Defendant. | NO. C08-1688-JLR<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Charlene A. Humphrey appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff was a thirty-four year-old woman at the time of her administrative hearing, with a ninth grade education. Administrative Record ("AR") at 320. She has no relevant past work experience, but had worked on and off as a motel housekeeper, fast food worker, and cocktail waitress. AR at 18. Plaintiff asserts that she is disabled due to left thoracic outlet

REPORT AND RECOMMENDATION - 1

syndrome, status-post 1st rib resection, cervical degenerative disc disease, and left shoulder bursitis/tendonitis. AR at 14. She asserts an onset date of June 1, 2003. AR at 12.

The Commissioner denied plaintiff's claim initially and on reconsideration. *Id*. Plaintiff requested an administrative hearing, which took place on April 25, 2008. AR at 317-55. On July 12, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits. AR at 12-19.

Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 5-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Humphrey bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At

step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On July 12, 2008, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since December 22, 2005, the application date.

2. The claimant has the following severe impairments: left thoracic outlet syndrome, status-post 1st rib resection; cervical degenerative disc disease; and left shoulder bursitis/tendonitis.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b).

5. The claimant has no past relevant work.

6. The claimant was born on ▉▉▉▉▉▉▉, 1973[2] and she was 32 years old on that date the application was filed, which is defined as a younger individual age 18-49.

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 22, 2005, the date the application was filed.

AR at 14-18.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

## VI. ISSUES ON APPEAL

There are three principal issues on appeal:

1. Did the ALJ err in his assessment of the medical evidence?

2. Did the ALJ err in his RFC assessment? and

3. Did the ALJ err in making an adverse credibility determination?

Dkt. No. 13 at 4-18.

## VII. DISCUSSION

### A. The ALJ Erred in His Assessment of the Medical Evidence and Therefore May Have Erred in His RFC Assessment

*1. Standards for Reviewing Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

Plaintiff claims the ALJ erred in his evaluation of the medical opinions of James Beiler, D.O., Kin Lui, M.D., and Ronald Taylor, M.D.

### 2. *Kin Lui, M.D. and Ronald Taylor, M.D.*

Dr. Lui worked at the Madrona Medical Clinic. He treated plaintiff from 2003 until plaintiff's care was transferred to Dr. Beiler in 2007. In January 2005, responding to a Department of Social and Health Services assessment, Dr. Lui diagnosed plaintiff with shoulder and neck pain, and wrote that she could sit for 3 hours in a 6 hour workday, could stand for 3 hours, but was limited to sedentary work, and that plaintiff had pushing and pulling restrictions. AR at 207. Dr. Lui answered "no" to the question as to whether plaintiff suffered from any mental health or any non-physical limitations. AR at 208. He also stated that the duration of plaintiff's condition was unknown. *Id.*

REPORT AND RECOMMENDATION - 7

Even before this, however, Dr. Lui began issuing notes excusing plaintiff from work for specified periods. The first (for 4 weeks) appears to have been issued in June 2003, when she began to experience significant left arm and neck pain. AR at 206. This was repeated in July 2003. AR at 205. She was referred to Dr. Taylor in August 2003, who performed surgery on her in August, and then issued a work deferral for at least 4 months following surgery. AR at 212. In September 2003, Dr. Taylor opined that she could not work at all, and noted that plaintiff could not do frequent stooping or bending until she recovered, and that she would need help with activities of daily living because of pain. AR at 210. In February 2004, Dr. Lui again excused plaintiff from work, nothing plaintiff's pain and numbness, and did so again in March 2004 until at least August 2004. AR at 202-04.

The ALJ did not discuss the opinions of Drs. Lui and Taylor with any specificity at all. Instead, he simply lumped together many different reports, concluding that:

> The claimant has a history of neck and left shoulder pain attributed to a thoracic outlet syndrome and addressed with surgical resection of the left first rib in 2003; later examinations were negative and functional capacity assessments were inconsistent, some finding her disabled (apparently for the purposes of TANIF), others finding a capacity for sedentary work. But clinical findings following her surgery were essentially normal, or only mild …. She also has left shoulder tendonitis/bursitis.

AR at 15-16.

As noted above, the ALJ found plaintiff had a RFC of light work. This appears to be contrary to the conclusions of two treating doctors. It may be that the plaintiff healed and was no longer subject to the same limitations. However, the ALJ's findings must be supported by substantial evidence, and conclusory dismissals of opinions of treating physicians neither comply with the *Orn* hierarchy, nor do they amount to substantial evidence. Accordingly, this case must be remanded with instructions to consider fully the opinions of Drs. Lui and Taylor and apply the proper analysis to their opinions.

### 3. James Beiler, D.O.

Dr. Beiler saw plaintiff on three occasions to treat her for her chronic neck pain. AR at 274-80. Plaintiff was a transfer patient from Dr. Liu, and in her first meeting with Dr. Beiler, plaintiff stated she felt she was disabled and was seeking permanent disability. AR at 280. He concluded that she had diffuse tenderness to "light palpable of bilateral cervical spine from C2 down to C7." *Id.* She also had 4/5 strength of the left upper extremity. He concluded that "[t]he diffuseness of her pain does not correlate with the MRI findings. . . . Some of her pain may be due to social stressors and history of anxiety and depression. She has been resistant to physical therapy and other conservative treatment." *Id.*

Three months later she again saw Dr. Beiler, who noted that plaintiff had "some limited range of motion of the cervical spine in all planes." AR at 277. He concluded that "Her symptoms continue to seem excessive based on the MRI finding." *Id.* He expressed concern about her use of prescribed medication on a long-term basis.

Three months later she saw Dr. Beiler again. He noted increased pain, due in part to the colder weather. He also noted that she obtained relief from massage, and that she was leaving for a trip to Montana. AR at 274.

In February 2008, Dr. Beiler answered some written interrogatories he received from plaintiff's attorney. AR at 298-301. He checked boxes that concluded that plaintiff had marked restrictions of her daily life, that her condition resulted in no difficulties in maintaining social functioning, that she had frequent deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner, and that she suffered from repeated episodes of deterioration or decompensation in work or work-like settings which caused her to withdraw from that situation or to experience exacerbation of signs and symptoms. AR at 299. When asked to explain, he wrote: "Charlene suffers from chronic neck pain with frequent exacerbations. Her condition does not allow her to do any strenuous or repetitive activities." *Id.*

He also confirmed that plaintiff did not have a spinal disorder which met a Listing, stating:

> Charlene had left thoracic outlet syndrome (TOS) with severe left arm pain. A vascular ultrasound confirmed her TOS. She underwent surgical decompression of the obstruction and repeat vascular ultrasound and nerve conduction studies confirmed resolution of the obstruction. An MRI of the cervical spine done 2/07 showed small catral disc and endplate extrusion at C5-C6 level. No high grade central spinal stenosis or neural foramina stenosis is identified. Recent MRI of lumbar spine showed no significant spinal disorder.

AR at 301.

The ALJ concluded that Dr. Beiler's answer to the special interrogatory regarding limitations of plaintiff's ability to perform daily activities, episodes of deterioration or decompensation, and limitations in concentration, persistence, or pace would not be given substantial weight. AR at 16. He found that the statements were not supportive of the doctor's conclusions, belied by more specific findings, and contrary to other physicians' findings. He also asserted that the limitations "were a well-meaning effort to accommodate his patient's disability claim." *Id.* In addition, the ALJ concluded that these were mental limitations unrelated to her cervical symptoms and that they were predicated on subjective pain complaints. AR at 16-17.

The ALJ erred when he added that Dr. Beiler's opinion was not entitled to special weight as a treating physician "given his recent, apparently one time, involvement with the claimant." AR at 17. Dr. Beiler was a treating physician, and such, his opinions as set forth in the *Orn* hierarchy means they can be rejected only for specific and legitimate reasons. The Commissioner acknowledges that the ALJ erred when he stated that Dr. Beileer was not a treating physician. However, the Commissioner argues that this error is harmless because he discussed the underlying opinions. The problem with the Commissioner's argument is that the Court is unable to determine whether the ALJ treated Dr. Beiler's opinions in accord with the *Orn* hierarchy. From the language of the ALJ decision, it appears that Dr. Beiler's opinion

REPORT AND RECOMMENDATION - 10

received the same conclusory dismissal as the opinions of Drs. Lui and Taylor. All were treating physicians. This seems to have been overlooked by the ALJ and requires reversal.

On remand, the ALJ is directed to reevaluate the medical opinions consistent with this opinion. This will necessarily involve a further reevaluation of the plaintiff's RFC.

### B. The ALJ May Have Erred in Making an Adverse Credibility Determination

It is the responsibility of the ALJ to determine credibility, to settle conflicts in medical testimony, and to resolve any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because it is unsupported by objective medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons, supported by substantial evidence, for rejecting the claimant's testimony. *Id*.

When evaluating a claimant's credibility, the ALJ "must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). General findings are insufficient. *Smolen*, 80 F.3d at 1284. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony or between his testimony and conduct, daily activities, work record, and the testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Id.*

The ALJ made no finding that plaintiff was malingering. In addition, plaintiff has presented objective evidence of manipulative limitations. AR at 194, 196, 270. Consequently, in order to reject plaintiff's testimony the ALJ should have provided clear and convincing reasons for doing so.

The ALJ entered an adverse credibility determination based on the ALJ's assessment of the medical evidence and on her daily activities. AR at 17. As noted above, the ALJ erred in his treatment of the medical evidence. Accordingly, discounting testimony because it may conflict with medical evidence is not an appropriate basis for making an adverse credibility determination. Plaintiff's daily activities are an appropriate basis upon which to make an adverse credibility determination. The ALJ credited lay witness testimony "only to the extent they are consistent with the medical record, including the lack of upper extremity findings, the resolution of the claimant's thoracic outlet problems[3]." *Id.* Again, because of an error in the ALJ's treatment of the medical evidence, the adverse credibility decision based on daily activities cannot withstand scrutiny. Moreover, if the ALJ is going to use daily activities to justify an adverse credibility determination, the activities cited must meet the clear and convincing standard. On remand, the ALJ is directed to reevaluate the plaintiff's credibility in light of the medical evidence reassessment and her ability to perform sustained work.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.

A proposed order accompanies this Report and Recommendation.

DATED this 3rd day of December, 2009.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

---

[3] The ALJ's conclusion that the plaintiff's thoracic outlet problems was resolved may also be premature, in light of Dr. Brettell's report dated December 10, 2004 (AR at 220) and the follow-up tests ordered.